**Mark and Kalliope HART v. Peter AMOUR v. Fusion Semiconductor Systems Corp.**

[776 A.2d 420]

No. 00-279

April 20, 2001. Third-party defendant and lessee Fusion Semiconductor Systems Corp. (Fusion) appeals the grant of defendant/third-party plaintiff and lessor Peter Amour's motion for summary judgment against Fusion in this negligence action. Fusion claims that the court's grant of summary judgment, enforcing an indemnification agreement between Fusion and Amour, was improper because the indemnification agreement vio-

lates public policy.* Because the indemnification agreement properly assigns Fusion responsibility to indemnify Amour, we affirm.

The following facts are not in dispute. Fusion, as tenant, and Amour, as landlord, entered into a commercial real estate lease, effective June 1, 1996, which included the following provision:

> INDEMNITY REGARDING USE OF PREMISES. Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorneys fees, if any, which Landlord may suffer or incur in connection with Tenant's use or misuse of the Premises.

The agreement also provides that Fusion maintain liability insurance of at least $100,000. On December 7, 1998, Hart filed a negligence complaint against Amour, alleging that on May 2, 1997, Hart suffered severe injuries in his workplace (the premises leased from Amour by Fusion) as a result of falling from a loft storage area, through a suspended ceiling, and landing on the floor below. The Harts claimed that Amour breached the duty of care he owed to Hart and others working within the building to provide a building reasonably safe and free from hazards.

Amour subsequently filed a third-party complaint against Fusion, alleging that

---

* Fusion also states that the record failed to sufficiently demonstrate undisputed material facts to support summary judgment, but does not otherwise argue or brief this claim of error. Accordingly, we need not address this claim. See *Granger v. Town of Woodford*, 167 Vt. 610, 613 n.2, 708 A.2d 1345, 1348 n.2 (1998) (mem.) (declining to address claim inadequately briefed).

the lease agreement between Fusion and Amour obligated Fusion to defend and indemnify Amour against Hart's claims. Fusion counterclaimed against Amour, alleging that Amour had been negligent in delivering unsafe property to Fusion, and that Amour had breached the lease agreement by failing to maintain the premises in good repair at all times and by violating other common law duties regarding the maintenance of the premises.

Fusion and Amour subsequently filed motions for summary judgment in their respective claims against each other, focusing on the indemnity provision of the lease. The court granted summary judgment to Amour, noting that the indemnity provision at issue was a conventional component of commercial leases, and relied upon our decision in *Hamelin v. Simpson Paper Co.*, 167 Vt. 17, 702 A.2d 86 (1997), in holding that the indemnity provision's allocation of risk, negotiated by these commercial equals, was consistent with Vermont law. Thereafter, Fusion filed a motion to reconsider, and Amour filed a reply as well as a motion to dismiss the counterclaim, arguing that Fusion could not avoid its obligation under the indemnity provision by claiming breach of contract. The court agreed with Amour, denying the motion to reconsider and granting the motion to dismiss. After the court's approval and entry of the parties' stipulation to the entry of final judgment on the issues (pursuant to V.R.C.P. 54(b)), Fusion brought this appeal.

We review a grant of summary judgment de novo, *RLI Ins. Co. v. Agency of Transp.*, 171 Vt. 553, 554, 762 A.2d 475, 477 (2000) (mem.), using the same standard as the trial court. *Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 557, 762 A.2d 804, 806 (2000) (mem.). A trial court's grant of summary judgment is appropriate only where, "taking the allegations of the nonmoving party as true, it is evident that there are no genuine issues of material fact and the

movant is entitled to judgment as a matter of law." *Galfetti v. Berg, Carmolli & Kent Real Estate Corp.*, 171 Vt. 523, 524, 756 A.2d 1229, 1231 (2000) (mem.); see also V.R.C.P. 56(c)(3).

Fusion does not contest the clarity or sufficiency of the language used in the indemnity provision as it pertains to requiring indemnification for causes of action arising out of Amour's own alleged negligence. Rather, Fusion relies primarily upon *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 670 A.2d 795 (1995), in arguing that the indemnity provision is unenforceable as a matter of law as violative of public policy. Fusion claims this is because allocating liability for injuries suffered by Amour's tenants, as a result of his own failure to comply with building codes, undermines Amour's incentive, as well as his common law duty and statutory obligation, to keep his premises safe and free from dangerous conditions.

In *Dalury*, a negligence action brought by an injured skier against the operator of a ski area, we held that a ski area operator may not, through an exculpatory agreement printed on a season pass and photo identification card, be held harmless for injuries to its patrons resulting from its own negligence. 164 Vt. at 330, 670 A.2d at 796. We identified that circumstance as requiring a public policy based exception to upholding the validity of exculpatory agreements, with the principal public policy implications being those "underlying the law of premises liability." *Id.* at 334, 670 A.2d at 799.

However, the present case has far more in common with *Hamelin* than with *Dalury*. *Hamelin*, which came before us in a similar procedural posture to the case at bar, involved an employee of Vescom, a security company, who had been injured while working on the premises of Simpson Paper Co. while providing contracted-for security services. The employee sued Vescom in negligence, and Vescom filed a third-party claim against Simpson based on an indem-

nification clause in their contract. Our holding focused on the language of the indemnification provision, which required Vescom to indemnify Simpson for losses incurred by injuries which arise from activity "in any manner connected with" the services Vescom provided to Simpson. *Hamelin*, 167 Vt. at 19, 702 A.2d at 88. We stated that the "injury suffered by a security guard while the guard is on duty and on Simpson's premises is without question 'connected with' Vescom's security operation." *Id.* at 20, 702 A.2d at 88. We held that the provision required Vescom to indemnify Simpson for the claims by the employee, even if the injuries were caused by Simpson's own negligence. *Id.* at 20-21, 702 A.2d at 89.

In *Hamelin*, Vescom argued that allowing the indemnity provision to extend to the negligent acts of the lessor "offends the public policy underlying the law of premises liability." *Id.* at 20, 702 A.2d at 89. Fusion makes the same claim, and the grounds upon which we rejected that argument in *Hamelin* are present in this case as well. In *Hamelin*, we distinguished the public policy reasoning applied in *Dalury* by recognizing that the agreement at issue "reflects an arms-length business deal, in which corporate parties divided certain risks and responsibilities. The indemnification clause at issue did nothing more than allocate to Vescom the cost of purchasing insurance to cover the risk." *Id.* at 21, 702 A.2d at 89. "The considerations of public policy that motivated us in *Dalury*, such as unequal bargaining power, fairness, and the benefits of risk-spreading, are not present here." *Id.*; see also *Furlon v. Haystack Mountain Ski Area, Inc.*, 136 Vt. 266, 269-70, 388 A.2d 403, 405 (1978) (rejecting public policy argument to not enforce indemnification agreement when situation lacks disparity in bargaining power between parties, and not unfair to hold parties to the agreement).

The agreement between Fusion and Amour represents an arms-length commercial transaction between a business and a commercial lessor which divides risks and responsibilities. Fusion does not contend that there was any disparity in bargaining power between these commercial parties. It is similarly uncontested that the language of the indemnity provision requires Fusion to indemnify Amour in claims which arise out of Fusion's use or misuse of the leased premises. See *Hamelin*, 167 Vt. at 19, 702 A.2d at 88 ("When the contract language is clear, the intent of the parties is taken to be what the agreement declares."). The injury suffered by Hart, which occurred while performing his work duties at his place of employment, clearly falls within the scope of his employer's use of the premises, and the agreement requires that Fusion indemnify Amour in the ensuing negligence action.

We also address the court's dismissal of Fusion's counterclaim. A dismissal made pursuant to Rule 12(b)(6) is improper "unless it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in his complaint which would entitle him to relief." *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982), *overruled on other grounds by Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990).

The court based its decision to dismiss the counterclaim on the notion that Fusion was merely attempting to circumvent its indemnification obligation by claiming that the lease had been breached as a result of the same underlying facts which require the indemnification. The court reasoned that allowing Fusion's counterclaim would permit an "end run" of the indemnification obligation and would be "at odds with the risk allocation purposes behind indemnification agreements and . the case law interpreting them." We agree with the

Arizona Supreme Court that "[i]f the language of an indemnity agreement 'clearly and unequivocally indicates that one party is to be indemnified, regardless of whether or not that injury was caused in part by that party, indemnification is required notwithstanding the indemnitee's active negligence.'" *Cunningham v. Goettl Air Conditioning, Inc.*, 980 P.2d 489, 493 (Ariz. 1999); see also *MacGlashing v. Dunlop Equip. Co.*, 89 F.3d 932, 938 (1st Cir. 1996) (in negligence action, indemnity provision in lease agreement unaffected by breach of underlying agreement). To allow otherwise would defeat the legitimate purposes for which commercial parties negotiate and enter into risk allocation agreements. See *Hamelin*, 167 Vt. at 21, 702 A.2d at 89 (recognizing ability of commercial parties to allocate risk by agreement). In light of the indemnification provision, Fusion's counterclaim is without merit, and dismissal was therefore appropriate in this case.

*Affirmed.*

Motion for reargument denied May 15, 2001.